UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GILBERTO ROJAS PEDROZA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:26-cv-00203-SEB-TAB |
| | ) |
| SAMUEL OLSEN Director of Chicago Field Office, U.S. Immigration and Customs Enforcement, *et al.*, | ) |
| | ) |
| Respondents. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING RESPONDENTS' COUNSEL TO SHOW CAUSE**

Gilberto Rojas Pedroza alleges that he was unlawfully arrested and detained by the Indiana State Police and then by federal immigration authorities. He seeks a writ of habeas corpus from the Court directing that he be immediately released from immigration detention.

Mr. Rojas Pedroza sought relief based on his Fourth Amendment right to be free from unreasonable seizures, his Fifth Amendment right to due process, and the statutes and regulations governing immigration officers' interrogation, arrest, and detention powers. Respondents initially ignored those arguments in responding only that Mr. Rojas Pedroza must be detained without bond under 8 U.S.C. § 1225(b)(2). When directed to supplement their response and address Mr. Rojas Pedroza's specific claims, respondents addressed only Mr. Rojas Pedroza's due process argument, without mentioning his Fourth Amendment, statutory, and regulatory arguments. Mr. Rojas Pedroza has replied that his detention was not authorized by § 1225(b)(2) and, in any event, no legal authority authorizing his detention cures the constitutional violations that he suffered when he was unlawfully seized and detained without due process.

This order addresses three specific issues. First, notwithstanding Respondents' failure to address Mr. Rojas Pedroza's unlawful seizure arguments, we conclude that his release by court order is not an available remedy. Second, we find that the government's authority to detain Mr. Rojas Pedroza did not arise under § 1225(b)(2), which makes him entitled to a bond hearing. Third, because counsel for Respondents has given short shrift to the issues raised in Mr. Pedroza's petition, despite having been given two opportunities and an unambiguous directive to respond, the Court directs counsel to <u>show cause</u> why they should not be sanctioned for their repeated failures.

**I. Facts**

Mr. Rojas Pedroza entered the United States in 2022 near Nogales, Arizona. He did not enter through a port of entry. He had no interaction with U.S. immigration officers until this year (2026). Dkt. 6-1 at 5.

On January 23, 2026, Mr. Rojas Pedroza was a passenger in a vehicle stopped by Indiana State Police (ISP) troopers. Dkt. 1 ¶ 16. The basis for the traffic stop has not been provided. The troopers demanded that Mr. Rojas Pedroza present his identification documents, specifically, his passport. *Id.* ¶ 18. When Mr. Rojas Pedroza produced an identification card issued by the Mexican government, the troopers detained him along with the other occupants of the vehicle for a period of approximately 30 minutes. *Id.* ¶ 20.

A U.S. Immigration and Customs Enforcement (ICE) report indentifies the troopers as being part of a "287g task force." Dkt. 6-1 at 5. The Court understands that notation to reference 8 U.S.C. § 1357(g), which authorizes the U.S. Attorney General to deputize state and local law enforcement agencies to perform various immigration officers' functions, including investigations, arrests, detentions, and transportation.

During Mr. Rojas Pedroza's detention, the troopers apparently contacted ICE officials, who determined that Mr. Rojas Pedroza was not lawfully in the United States. Dkt. 6-1 at 5. An "Authorized Immigration Officer" therefore issued an administrative warrant addressed to: "Any immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of Title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations." *Id.* at 3. The administrative warrant incorporates statements allegedly made by Mr. Rojas Pedroza and "other reliable evidence" establishing him as a removable alien, and it "command[s]" that he be taken into custody for removal proceedings. *Id.* The warrant also references the fact that an officer presented that document to Mr. Rojas Pedroza and read it to him in Spanish on January 23, the day of the traffic stop. *Id.*

The troopers transported Mr. Rojas Pedroza for detention in a Kentucky jail. Dkt. 6-1 at 5. He was eventually moved to the Clay County (IN) Jail, where he remains detained. On January 28—five days after his arrest—officers presented Mr. Rojas Pedroza with the option to elect voluntarily departure from the United States or to submit to a removal proceeding. Dkt. 6-1 at 1–2. Mr. Rojas Pedroza chose to voluntarily depart. However, two days later officers issued to him a notice to appear, charging him with being a removable alien and initiating a removal proceeding against him. *Id.*

There is no indication that Mr. Rojas Pedroza requested or has ever received a bond hearing.

## II. Claims for Immediate Relief

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Rojas Pedroza contends that his custody is unlawful because he was originally questioned and

3

detained in violation of the Fourth Amendment and the laws and regulations governing immigration officers. He also contends that his custody is unlawful because he did not receive prompt notice of the basis for his detention or any opportunity to oppose his detention. Dkt. 1 ¶¶ 56–63.

In their initial response to Mr. Rojas Pedroza's arguments set forth in his petition, Respondents provided no response. Dkt. 6. Thus, the Court ordered Respondents to supplement their filing to address "the arguments presented in the habeas petition." Dkt. 7 at 2. Respondents thereafter filed what purported to be a supplement which was, at most, a bare bones rejoinder limited to Mr. Rojas Pedroza's "notice" argument, but lacking in any citations to controlling legal authorities. Dkt. 8 at 1–2. Respondents thus entirely failed to address Mr. Rojas Pedroza's claims regarding the lawfulness of his arrest or the officers' compliance with the statutory and regulatory requirements.

In any other context, Respondents' failure to address Mr. Rojas Pedroza's claims, while frustrating, would likely end the Court's immediate concerns because "perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017); *see also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Such a waiver would leave Mr. Rojas Pedroza's request unopposed and open the door to an order granting the requested relief.

However, the Seventh Circuit makes clear that "default judgments are disfavored in habeas corpus cases," directing that a court "ordinarily should proceed to the merits of the petition," even where respondents fail to timely respond. *Bleitner v. Welborn*, 15 F.3d 652, 653 (7th Cir. 1994). Resolving the merits of Mr. Rojas Pedroza's claims without a response from the government—

4

thereby imposing the obligation on the Court to come up with a justification for Mr. Rojas Pedroza's continued detention—is truly burdensome and unfair, but we shall do what is required of us. We begin by addressing the merits of Mr. Rojas Pedroza's claim for immediate release.

A.     **Fourth and Fifth Amendment Claims**

Mr. Rojas Pedroza's Fourth and Fifth Amendment claims are relatively straightforward. He contends that his initial questioning and arrest violated the Fourth Amendment because they were not justified by a reasonable suspicion that he had committed a crime. Dkt. 1 ¶¶ 45–46, 56–57 (citing *Rodriguez v. United States*, 575 U.S. 348, 350 (2015) ("A seizure justified only by a police-observed traffic violation" becomes "unlawful if it is prolonged beyond the time reasonably required to" issue a ticket.) (internal quotation omitted); *see also Arizona v. United States*, 567 U.S. 387, 407 (2012) ("If the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent."); *Melendres v. Arpaio*, 695 F.3d 990, 1000 (9th Cir. 2012) ("[A] detention beyond the duration of the initial traffic stop must be supported independently by reasonable suspicion of criminality. . . . We have long made clear that, unlike illegal entry, mere unauthorized presence in the United States is not a crime."). Mr. Rojas Pedroza contends that, once he was arrested, he had a Constitutional right to prompt notice of the legal and factual basis for his arrest and an opportunity to challenge his detention. Dkt. 1 ¶¶ 47, 51–57 (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Demore v. Kim*, 538 U.S. 510, 523 (2003)).

We assume, in the absence of any argument by the government to the contrary, that Mr. Rojas Pedroza's Constitutional rights were violated, as he has alleged. However, even if true, his immediate release is not a legally available judicial remedy.

"[O]nce deportation proceedings have begun the legality of the alien's detention"—or, more precisely on the facts of that case, the legality of the alien's *arrest*—"can no longer be tested by

way of a habeas corpus proceeding." *Arias v. Rogers*, 676 F.2d 1139, 1143–44 (7th Cir. 1982). The Court knows of no authority applying a different rule to violations of the constitutional right to notice. Indeed, in the analogous context of pretrial criminal confinement, once probable cause is established and the prosecution has commenced, the defendant's remedies are available only in the context of the criminal proceeding. *Bridewell v. Eberle*, 730 F.3d 672, 676–77 (7th Cir. 2013) ("Bridewell . . . cannot show injury. The state judge concluded that probable cause existed to find that she had shot Chandler and ordered her to be held—and also revoked her bail on the drug-distribution charge. . . . Events showed that Bridewell had been arrested properly and was not entitled to release on bail. If the police had complied with [*County of Riverside v. McLaughlin*, 500 U.S. 44, 111 (1991)], she would have learned these things a little sooner but would have remained in jail. This means that she was not injured by the delay.).

As we further discuss below, Mr. Rojas Pedroza has available to him certain statutory avenues to challenge his detention during his removal proceeding. Whatever violations of his Fourth or Fifth Amendment rights he suffered, his recourse exists only in the context of his removal process.

**B.      Statutory and Regulatory Claims**

Mr. Rojas Pedroza contends that his arrest and his detention without his receipt of any notice of his rights violates 8 U.S.C. § 1357 and related regulations. Federal agencies are required to comply with federal statutes and their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954). "*Accardi* and its progeny teach generally that federal agencies are required to follow their own regulations and some other formally adopted procedures, including those that govern exercises of an agency's discretion." *Zelaya Diaz v. Rosen*, 986 F.3d

6

687, 690 (7th Cir. 2021). Agency actions that do not comply with federal law and regulations may be set aside under the Administrative Procedure Act, 5 U.S.C. § 706(2).

However, as a habeas petitioner, Mr. Rojas Pedroza's claim that he was unlawfully arrested and detained does not entitle him to having his detention set aside or to being released.

Title 8, U.S.C. § 1357 sets out certain enforcement and standards for "immigration officers," including Section 1357(g), which authorize the Attorney General to deputize state and local law enforcement officers to exercise certain of those authorities. Title 8 C.F.R. § 287.3 addresses warrantless arrests by immigration officers, and §§ 287.5 and 287.8 further regulate enforcement activities. Mr. Rojas Pedroza contends that his arrest was unlawful because ISP troopers questioned him and detained him without legal justification. Importantly, Title 8 U.S.C. § 1357 and the related regulations set out in 8 C.F.R. §§ 287.3, 287.5, and 287.8 apply specifically to "immigration officers," not to state officers deputized under § 1357(g). Moreover, the regulations refer to immigration officers authorized to take certain actions under various parts of § 1357, and § 1357(g) is not included in that list. In short, Mr. Rojas Pedroza's arguments fail to persuade us that he is entitled to an order releasing him from custody based on the ISP troopers' conduct in arresting and detaining him.

Regarding his entitlement to notice and an opportunity to challenge his detention, it is true that § 287.3(d) requires that "a determination . . . be made within 48 hours of the arrest . . . whether the alien will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest as prescribed in 8 CFR parts 236 and 239 will be issued." To the extent Respondents violated that requirement by delaying the issuance of the notice and placing him in custody, it is clear that he has at this point received the required notice. His legal claim challenges that delay, not his detention as such. Accordingly, we lack a legal basis on which to release him

7

from detention. Mr. Rojas Pedroza has not established that the government's denials of his right to prompt notice and an opportunity to challenge his detention provide a basis for this Court to set aside his detention, since he has clearly now received both notice and an administrative opportunity to challenge his custody. This request must therefore be denied.

### III. Claims for a Bond Hearing

Respondents maintain that the Immigration and Nationality Act (INA) not only allows for but requires Mr. Rojas Pedroza to be detained without bond and that this Court lacks jurisdiction to review or change the government's decision to withhold his bond. Mr. Rojas Pedroza argues that his detention is governed by a different part of the INA that makes him eligible for discretionary release on bond. We agree here with Mr. Rojas Pedroza.

**A.**     **Detention Authority and Bond Eligibility**

According to Mr. Rojas Pedroza, his arrest and detention we authorized under 8 U.S.C. § 1226(a):

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>
>> (B) conditional parole[.]

In rebuttal, Respondents argue that Mr. Rojas Pedroza's detention was both authorized and required by 8 U.S.C. § 1225(b)(2)(A), which directs that "an alien who is an applicant for admission . . . shall be detained" for the pendency of removal proceedings. Because Mr. Rojas Pedroza has not been admitted to the United States by action of immigration officials, and because

8

he opposed his removal, he was an "alien who is an applicant for admission" and therefore subject to compulsory detention under § 1225(b)(2)(A). Dkt. 6 at 3–14. We reject Respondents' analysis on two grounds.

First, we reject Respondents' interpretation of § 1225(b)(2)(A) that holds that every unadmitted alien arrested inside the United States who seeks to remain here, no matter how long after arriving, is an applicant for admission subject to mandatory detention. The Seventh Circuit recently shared our skepticism of Respondents' argument. *See Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–61 (7th Cir. 2025) ("The question is whether § 1225(b)(2)(A) covers any noncitizen who is unlawfully already in the United States as well as those who present themselves at its borders. . . . Based upon the text and structure of the two provisions, we believe that Plaintiffs have the better argument on the current record."). Both before and after that Seventh Circuit opinion, our court and the vast majority of other district courts have rejected Respondents' interpretation. *See, e.g.*, *Perez Reyes v. Bondi*, No. 4:25-cv-00239-SEB-KMB, 2025 WL 3755928, at *3 (S.D. Ind. Dec. 29, 2025) ("The Court has previously determined that, considering § 1225 as a whole, the most natural meaning is that it applies to 'arriving' noncitizens attempting to enter the United States rather than undocumented aliens like Ms. Perez Reyes who have lived in the interior of the United States for years."). "As the Court has previously explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Perez Reyes*, 2025 WL 3755928, at *3 (citing *Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *14–19 (S.D. Ind. Oct. 11, 2025)).

9

Respondents, after citing a smattering of contrary decisions, do concede that our prior analysis "control[s] the result in this case should the Court adhere to the legal reasoning in those prior decisions." Dkt. 6 at 10. Respondents offer no binding authorities or arguments to the contrary. We decline, therefore, to depart from our previous holdings.[1]

Second, even if Respondents' legal theory were persuasive, it can not be reconciled with the manner in which the government itself actually treated Mr. Rojas Pedroza. When immigration officials arrested Mr. Rojas Pedroza and placed him in custody, an "Authorized Immigration Officer" directed through an administrative warrant that he be detained for the pendency of removal proceedings, pursuant to § 1226. Dkt. 6-1 at 3 (citing INA § 236). This action reflects that Mr. Rojas Pedroza was not subject to compulsory detention and that his detention was imposed pursuant to § 1226, not by § 1225.

---

[1] Respondents make passing reference to two district court decisions that we briefly address here based on their timeliness and their origins within the Seventh Circuit. In *Hernandez v. Olson*, a judge from the Eastern District of Wisconsin accepted the government's interpretation of the statutory text and found that an alien who had previously been apprehended and released multiple times and was later arrested by ICE agents while working at a Wisconsin farm was an applicant for admission subject to mandatory detention under § 1225(b)(2). No. 25-cv-1670-bhl, 2026 WL 161509, at *3–7 (E.D. Wis. Jan. 21, 2026). And, in *Cruz Rodriguez v. Olson*, a Northen District of Illinois judge found that §§ 1225(b)(2) and 1226(a) *both* apply to certain aliens apprehended inside the United States. *See* No. 1:25-cv-12961, 2025 WL 3672856, at *7 (N.D. Ill. Dec. 17, 2025), withdrawn & superseded, 2026 WL 63613 (N.D. Ill. Jan. 8, 2026) ("Sections 1225(b)(2) and 1226 have different, but overlapping, scopes."). Both decisions dismiss *Castañon-Nava* as persuasive authority. *Hernandez*, 2026 WL 161509 at *6; *Cruz Rodriguez*, 2025 3672856 at 5, n.6. We view this reasoning to be problematic for the reasons elucidated in prior cases as further discussed below. Regardless, we are drawn by the logic of another decision handed down by the Northern District of Illinois viewing *Castañon-Nava* as highly persuasive and directly applicable authority from a superior tribunal on a pure question of law. *See Morales Perez*, No. 1:25-CV-14995, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026).

Respondents also cite *Buenrostro-Mendez v. Bondi*, which the Fifth Circuit decided a few days after the Respondents filed their response brief in our case. Dkt. 6 at 13, n.1. *Buenrostro-Mendez* concludes that "seeking admission" is not limited to "arriving" noncitizens and therefore supports the respondents' position in this case. No. 25-20496, --- F.4th ---, 2026 WL 323330, at *4 (5th Cir. Feb. 6, 2026). The Fifth Circuit's decision is not binding here and in any event, we do not share the view explicated there. We instead defer to the Seventh Circuit's more persuasive rationale in *Castañon-Nava*.

As we have previously held, mandatory detention and discretionary release are mutually exclusive concepts. An alien cannot be subject both to mandatory detention under § 1225(b)(2)(A) and eligible for discretionary release under § 1226(a)(2); the provisions exist harmoniously only if they apply to separate classes or categories of aliens. *Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029524, at *6 (S.D. Ind. Oct. 30, 2025). The government detained Mr. Rojas Pedroza in January pursuant to § 1226(a). It cannot thereafter assert that he is being detained based on § 1225(b)(2), which makes him ineligible for discretionary release. *Id.* (citing *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025); *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. 2023)); *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *9 (N.D. Cal. Sept. 26, 2025) ("[T]he government cannot switch tracks and subject Petitioners to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioners in removal proceedings under section 1229a and released them on their own recognizance under section 1226(a)."); *Fornalik v. Perryman*, 223 F.3d 523, 530 (7th Cir. 2000)).

By detaining Mr. Rojas Pedroza and depriving him of any opportunity for release on bond, his continued detention violates the INA. Accordingly, he is entitled to the issuance of a writ of habeas corpus.

**B.     Jurisdiction Under § 1226(e)**

Respondents further maintain that, even if Mr. Rojas Pedroza's detention was authorized by § 1226, Section § 1226(e) removes our jurisdiction over his claim. Dkt. 6 at 9. The strength of this argument collapses under its own weight. Section 1226(e) precludes review of the "Attorney General's discretionary judgment regarding the application of" § 1226 to detain an alien or revoke or deny bond or parole. Here, the Attorney General has not rendered a discretionary judgment

11

under § 1226. She has rendered no judgment at all. She has neither considered the possibility of bond or parole, nor has she revoked or denied them.[2]

Had Mr. Rojas Pedroza requested bond and an immigration judge denied his request for release after considering the issue of release on the merits, and had Mr. Pedroza petitioned this Court for a different result, Section 1226(e) would likely preclude our intervention. But the record reveals that Mr. Rojas Pedroza has never appeared before an immigration judge and that the government has made no discretionary decision to detain him, based on its insistence that it has no discretion to do so. We find that Section 1226(e) does not apply to this case and thus does not foreclose the requested bond hearing.

**C.    Relief Available**

Any relief afforded through a grant of habeas corpus must be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Mr. Rojas Pedroza maintains—and we agree—that because his detention is based on § 1226(a), while the government is authorized to "continue to detain" him, he is eligible for consideration for discretionary release. 8 U.S.C. § 1226(a)(1). Mr. Rojas Pedroza's continued custody is not unlawful as such. Rather, his custody is unlawful only to the extent that the government continues to refuse to consider whether he is entitled to be released on bond. In brief, he is entitled to a bond hearing; we do not address any other rights he may have.

## IV. Government's Failure to Respond

Following the filing of Mr. Rojas Pedroza's complaint, the Court ordered Respondents to "answer the allegations of the habeas petition." Dkt. 3 ¶ 2. Technically, the government filed a response, but it was wholly inadequate because it did not address any of Mr. Rojas Pedroza's

---

[2] There is no indication that Mr. Rojas Pedroza has formally requested bond from his immigration judge, but Respondents do not contend that this acts as a bar to his habeas petition from proceeding.

allegations. Instead, Respondents simply presented a random legal argument as justification for Mr. Rojas Pedroza's detention. Dkt. 6.

Respondents were granted a second opportunity to respond by the Court, with this specific directive: Respondents were to "specifically address . . . the arguments presented in the habeas petition." Dkt. 7. Respondents again completely and entirely failed to address the claims asserted by Mr. Rojas Pedroza.

These refusals by Respondents to respond to the issues pending before the Court are problematic on several levels.

First, Respondents' failure to address the dispositive issues before the Court frustrates the Court's ability to undertake a full and correct analysis of the merits of the claims. We are legally obligated to adjudicate habeas claims on their merits, even when the Respondents choose not to participate in the process. When the government withholds its expertise, especially in a critical legal context involving determinations of the legal basis for the detention of aliens, it invites flawed or superficial decision-making.

Second, Respondents' failure to respond in this instance delayed justice for Mr. Rojas Pedroza, which especially in a habeas case where Petitioner is detained, is no small consequence. Though Mr. Rojas Pedroza did not prevail on his original claims, we have determined that he is entitled to a bond hearing. Had Respondents responded to his filings on the merits in a timely fashion, as the Court explicitly directed, he would likely have been afforded the legal process he was due in an expeditious manner. Because of Respondents' dilatoriness, he has languished in custody and his legal status has been in limbo. *Every* delay is significant when its consequence is an unlawful or unnecessary confinement in jail.

Third, Respondents' failure to respond in a timely fashion or in a substantively helpful way consumed (unfairly) precious judicial resources by diverting the Court's attentions from attending to the claims of other litigants. As of February 23, 2026, forty-one open habeas corpus actions brought by ICE detainees repose on our court docket—along with literally thousands of other pending civil and criminal matters. The Court is pressed to allocate the necessary time and resources to respond to the needs of every litigant. When attorneys fail to perform their role, the pressures mount up and the judicial process buckles.

Respondents' unresponsiveness has imposed an added burden on the Court. If their failure to address Mr. Rojas Pedroza's arguments and to comply with clear judicial instructions were only a one-time slip-up, we would likely quell our frustrations and simply move on. Unfortunately, Respondents' derelictions have become a frequent and increasingly troublesome pattern, finally necessitating a firm response by the Court. *See Mares Villagomez*, No. 1:26-cv-00089-SEB-KMB, dkt. 13, at *2 (S.D. Ind. Feb. 20, 2026) ("Regarding the failure to apprise the Court of bond hearing results, the Court takes judicial notice that the Government has routinely been ignoring this part of the Court's order."); *Barry v. Swearingen*, No. 2:26-cv-00066-JRS-MKK, dkt. 14, at *6 (S.D. Ind. Feb. 19, 2026) ("Before concluding, the Court notes that it expects respondents to respond to dispositive arguments in a habeas corpus case seeking relief from immigration detention. . . . To simply state the government's preferred vision of the law without regard for the specific basis on which the petitioner seeks relief is unacceptable."); *Fuentes Gomez v. Olsen*, No. 4:26-cv-00021-TWP-KMB, dkt. 10, at *9–10 (S.D. Ind. Feb. 13, 2026) ("[T]he government responds entirely to an argument that Gomez does not make . . . . [N]on-responsiveness is unacceptable."); *N.A.L.R. v. Bondi*, No. 4:25-cv-00192-SEB-KMB, dkt. 17, at *4–5 n.1 (S.D. Ind. Oct. 23, 2025) ("Respondents have entirely failed to address in their response brief what is the dispositive issue

before us, arguing merely that NALR's detention is authorized by 8 U.S.C. § 1231(a), a point that is not in dispute. . . . The Court cannot and will not perform the tasks properly required of the attorneys in terms of supplying arguments and legal authorities.").

We are not insensitive to the fact that the recent flood of immigration cases filed in our district and around the country impose similar challenges on government attorneys who must respond. It is, however, largely a problem of the government's own making. Nonetheless, when litigation is filed in courts to challenge government action and/or policies, government attorneys do not have the prerogative to simply opt out of the process. When "an attorney's 'contumacious conduct threatens a court's ability to control its own proceedings,' the district court's inherent authority to impose sanctions is 'at its pinnacle.'" *Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 958 (7th Cir. 2020) (quoting *Fuery v. City of Chicago*, 900 F.3d 450, 464 (7th Cir. 2018)).

Accordingly, Respondents are ordered to **show cause** on or before **March 2, 2026**, why sanctions should not be imposed against them, pursuant to 28 U.S.C. § 1927 and/or the Court's inherent authority to sanction misconduct, to address government counsels' failure to timely respond by submitting briefs and or motions that address the merits of the issues and to comply with the Court's orders. Counsel may include in its response a suggestion as to an appropriate sanction under the circumstances .

## V. Conclusion

The petition for a writ of habeas corpus is **denied** to the extent it seeks an order requiring the petitioner's immediate release. The petition is **granted** insofar as Respondents are granted **seven days within which** to certify that the petitioner has (1) appeared for a bond hearing before an immigration judge consistent with 8 U.S.C. § 1226(a) and pertinent regulations, or (2) been released from detention.

The pending motion for preliminary injunction, dkt. [2], is **denied** to the extent it seeks relief not otherwise covered by this order.

Counsel for Respondents is granted **through March 2, 2026**, within which to **show cause** why sanctions should not be imposed, pursuant to 28 U.S.C. § 1927 and/or the Court's inherent authority to sanction misconduct, for the reasons cited above.

The **clerk is directed** to enter **final judgment**.

**IT IS SO ORDERED.**

Date: 2/26/2026

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Kristen Maree Barrow
Law Office of Kristen Barrow
kristenmbarrow@gmail.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov